[No. 21551. Department Two. April 18, 1929.]

ANSON FERGUSSON et al., Appellants, v. G. W. GUY et al., Respondents.[1]

[1]Reported in 276 Pac. 855.

*Louis E. Haven,* for appellants.

*E. P. Whiting* and *J. F. Knight,* for respondents.

PARKER, J.—The plaintiffs, Fergusson, Bentley and John Guy, setting up their separate causes of action in one complaint, sought recovery against the defendants, G. W. Guy and the administrator of the estate of his deceased partner, B. C. Guy, as compensation for street improvement labor performed by the plaintiffs as employees of the partnership consisting of G. W. and B. C. Guy, prior to the latter's death; and also sought foreclosure of their separate lien claims therefor against lots belonging to the Seattle Title Trust Company adjoining portions of streets so improved.

The seeking of the lien foreclosures having made the cause one of equitable cognizance, trial was had in the superior court for King county, sitting without a jury, and resulted in personal money judgments awarding recovery in favor of each of the plaintiffs against the defendants, G. W. Guy and the administrator of his deceased partner's estate, and denial of foreclosure of their lien claims against the lots of the defendant Seattle Title Trust Company. From this disposition of the case in the superior court, the plaintiffs have appealed to this court.

Since sometime prior to October 10, 1926, the Seattle Title Trust Company has been the owner of certain lots in "Home Gardens," an official plat of lands in King county. The streets appearing upon the plat adjoining the trust company's lots were duly dedicated by the platter and accepted by the county as public highways. On October 10, 1926, the three plaintiffs, each separately, as employees of Guy Brothers, the copartnership consisting of the defendant, G. W. Guy and his

brother B. C. Guy, now deceased, commenced and continued to work for Guy Brothers until April 16, 1927, in clearing and grading streets in "Home Gardens," fronting the lots in question owned by the trust company, and other portions of the streets.

Guy Brothers seem to have had general superintendence over the clearing and grading of the streets in pursuance of some arrangement or contract with someone, but there is no direct evidence whatever as to the nature of any such arrangement or contract or as to who was a party thereto other than Guy Brothers. Counsel for the plaintiffs manifestly studiously avoided showing by direct evidence who was the other party to such arrangement or contract, even going to the extent of successfully objecting to counsel for the trust company cross-examining witnesses for the plaintiffs touching that question.

There is no direct evidence showing the trust company as having any connection with the street improvement work, or the causing of it to be done. The most that can be said in that behalf is that the trust company had some knowledge that the work was being done. The only evidence we have, even on that subject, is found in the following testimony of one of the trust company's officers, who was examined as a witness called for the plaintiffs. He testified, upon direct examination by counsel for the plaintiffs, as follows:

"Q. You are familiar with the tract of land known as 'Home Gardens?' A. Yes. Q. State whether or not it was known to the Seattle Title Trust Company that improvements were being made at 'Home Gardens?' A. Yes, it was. Q. Was it known to them that Guy Brothers were working out there? A. Yes; we knew that. We had no direct dealings with Guy Brothers, but we knew it. Q. Did you make any effort to stop them? A. No. Q. And you never

made inquiry as to what was actually being done? A. We knew they were clearing and putting in roads. Q. Roads and streets? A. Yes, roads and streets.''

He testified upon cross-examination by counsel for the trust company, as follows:

''Q. You never were out at the property during any of the time any of that work was going on, were you? A. I don't think I was personally, no, while it was going on. Q. Did you know who was doing this work? A. No, I knew Guy Brothers in connection with the general part of the work; that was all.''

There is no evidence in the record that the work in question was other than street improvement work.

There were no formal, separate findings made by the trial court, but it made recitals in the judgment which were in effect findings, and, among others,

''. . . that neither of said plaintiffs was employed by said defendant, Seattle Title Trust Company, or did or performed any labor at the request of said Seattle Title Trust Company, or at the request of any agent, contractor or subcontractor employed by said trust company.''

Thus, the court manifestly denied foreclosure of the lien claims upon the theory that the trust company did not, either directly or by agency authority, express or implied, or ratification, authorize the doing of the street improvement work so as to render its lots liable to liens securing the cost thereof.

The plaintiffs claim liens against the lots belonging to the trust company under Rem. Comp. Stat., § 1131, reading as follows:

''Any person who, *at the request of the owner* of any real property, *his agent, contractor or subcontractor,* clears, grades, fills in or otherwise improves the same, or any street or road in front of, or adjoining the same, has a lien upon such real property for the labor performed, or the materials furnished for such purposes.''

We italicize the words of this section to be particularly noticed. Counsel for the plaintiffs rely upon implied agency of Guy Brothers as representative of the trust company; seeking to draw such implication from the trust company's knowledge of the progress of the street improvement work while going on, and the trust company's silence and failure to protest to those carrying on the work against claims of liens for the cost thereof, which might be made against the trust company's lots.

No decision, considering a statutory lien right such as is given by this statute, has come to our notice, and we think there is none, holding a showing such as here made sufficient to establish implied agency securing lien rights such as are claimed by the plaintiffs. Under lien statutes like this which, in terms, require the work to be done at the request of the owner, his agent, contractor or subcontractor, even where the improvement is physically upon the property, it requires very clear proof of strong circumstances showing intimate relation between the owner and the making of the improvement to give rise to an implied agency such as will support a lien claim for the cost of the improvement against the owner's property.

It seems to us that, where the work consists of improving a public street in front of adjoining property, a work which is ordinarily done at the instance of public authorities, even a clearer case of implied agency must be shown to enable those who do the work of such improvement to successfully uphold their claim of lien against the property under this section. A claim of implied agency, as here presented, looking to the establishing of a claimed lien right for the cost of a street improvement in front of adjoining property, seems not to have been heretofore directly presented to this court. However, the following of our decisions lend

strong support to the view we reach that there was no such implied agency on the part of Guy Brothers for the trust company as would enable them or their employees to successfully claim a lien against the trust company's property: *Heald v. Hodder*, 5 Wash. 677, 32 Pac. 728; *Mentzer v. Peters*, 6 Wash. 540, 33 Pac. 1078; *Iliff v. Forssell*, 7 Wash. 225, 34 Pac. 928; *Baker v. Sinclaire*, 22 Wash. 462, 61 Pac. 170; *Northwest Bridge Co. v. Tacoma Shipbuilding Co.*, 36 Wash. 333, 78 Pac. 996; *Chavelle v. Island Gun Club*, 77 Wash. 304, 137 Pac. 511; *Pitcher v. Ravven*, 137 Wash. 343, 242 Pac. 375.

There are mechanics' and materialmen's lien statutes in some states which, because of their peculiar language, subject an owner's property to such liens with but slight showing of relationship between the owner and the one doing work upon, or furnishing the material for improvements physically upon, the land sought to be subjected to the lien; but such is not the rule under statutes like our § 1131, above quoted, requiring the work to be done "at the request of the owner, his agent, contractor or subcontractor," the latter, that is, "contractor or subcontractor," being regarded as his agent only if they are in fact *his* contractor or a subcontractor under *his* contractor. Such differing statutes of other states, and the holdings thereunder, are noticed in 18 R. C. L. 895, and 40 C. J. 90. We conclude that the trial court did not err in denying to the plaintiffs foreclosure of their claimed liens against the property of the trust company.

■ Some contention is made in behalf of the plaintiffs that the trial court erred in its award of the amount of recovery in favor of the plaintiffs, it being insisted that the recoveries so awarded were insufficient in amount under the evidence. This, of course, is now of no consequence, except as to the personal

judgments awarded against G. W. Guy and the administrator of his deceased partner's estate. It is plain, we think, that the expense incurred by the plaintiffs in having prepared and filed their lien claims is not chargeable against their employer G. W. Guy or the administrator of his deceased partner's estate, in view of the lien claims having failed. A review of the evidence also convinces us that we would not be justified in increasing the amount of the personal judgments against G. W. Guy and the administrator of his deceased partner's estate upon the merits; that is, we are unable to see that the evidence preponderates against the trial court's judgments in that respect.

We conclude that the judgments must be, in all respects, affirmed. It is so ordered. The trust company shall be awarded its costs against the plaintiffs and appellants, incurred in this court. The defendants and respondents, G. W. Guy and the administrator of his deceased partner's estate, not having appeared here, shall not be awarded any costs incurred in this court.

MITCHELL, C. J., MAIN, MILLARD, and FRENCH, JJ., concur.