[No. 26243. Department Two. January 7, 1937.]

A. S. NEWELL, *Respondent*, v. G. VERVAEKE *et al.*, *Appellants.*[1]

*John T. Raftis,* for appellants.

*G. W. Sommer,* for respondent.

[1]Reported in 63 P. (2d) 488.

BEALS, J.—On and for some time prior to July 25, 1934, G. Vervaeke and his wife were the owners of a considerable tract of land in Stevens county, valuable principally for the mineral it contained, including lode mining claims known as Legal Tender, Deer Trail No. 2, Victor, Runyon, Hoodoo, Hoodoo Extension, and Idaho.

On the date mentioned, Mr. and Mrs. Vervaeke granted to E. C. Quackenbush an option to purchase a considerable portion of their holdings, including the mining claims above mentioned. By the terms of the option, the purchaser was to pay $5,000 on or before August 13, 1934; $1,500 on or before February 1, 1935; and other payments aggregating, with the two above referred to, the sum of $75,000. The $5,000 payment was made and accepted, but the money due February 1, 1935, was not paid, and pursuant to written notice given, the option was ended and all rights of the grantee therein named terminated March 7, 1935.

The option, *inter alia,* contained the following paragraph:

"The party of the second part shall have the right to go upon said property and work and mine said property; provided, however, that all work shall be done in a good and workmanlike manner so as to properly preserve and protect the property, and said party of the second part shall pay all state and county taxes levied and assessed upon said property, and perform all necessary annual assessment work to meet the requirements of the laws of the United States and of the state of Washington, and file proper proofs thereof within the time provided by law, and shall keep the property free and clear of all liens whatsoever."

Mr. Quackenbush recognized the fact that his rights under the option had ceased, and, as far as the record in this case shows, since March 7, 1935, has never asserted any claim thereunder.

Pursuant to the paragraph of the contract above quoted, Mr. Quackenbush, having taken possession of the property, hired men to engage in certain mining and incidental operations on portions of the property covered by the option. Among these men were V. W. Tyler, Lowell W. Tyler, Steve Martin, and the plaintiff, A. S. Newell. These workmen received pay in full for all services rendered up to the middle of December, 1934, but were not paid for some work subsequently performed. Claiming that this work was for the benefit and protection of the Vervaeke properties, the four men named filed notices of claims of lien against the lode claims known as Deer Trail No. 2, Victor, Royal, Hoodoo Extension and Black Bear, situated in Deer Trail mining district.

The Messrs. Tyler and Steve Martin having assigned their liens to A. S. Newell, he instituted this action for the purpose of recovering judgment against Mr. Quackenbush for the amounts, respectively, due to him and his assignors; also asking that the liens be foreclosed against the mining claims. Judgment was rendered against Mr. Quackenbush for over eight hundred dollars. Mr. Newell was allowed a lien for $227.50; Lowell W. Tyler was allowed a lien for $51.50; and Steve Martin for $64. V. W. Tyler was granted judgment against Mr. Quackenbush, but was allowed no lien. From a decree foreclosing the three liens, Mr. and Mrs. Vervaeke have appealed.

Appellants assign error upon the entry of the decree of foreclosure against their property.

It is not denied that the Congress of the United States relieved the owners of mining claims from the necessity of performing annual assessment work for the year 1935, and that consequently no work was required to maintain the possessory rights to the claims for that year. The record clearly shows that respond-

ent and his assignors were hired by Mr. Quackenbush, it not being contended that any direct contractual relation existed between these workmen and appellants. Under the paragraph of Mr. Quackenbush's option above quoted, it appears that the grantee had the right to work and mine the property covered by the option, but he was not required to do any work whatsoever thereon; the option according him the privilege of working the property or not, as he pleased.

Mr. Quackenbush had assigned an interest in his option to one C. L. Wickstrom, who in turn assigned his rights to the Perdiver Mining Company. Mr. Quackenbush also held a lease from Messrs. A. W. Tyler and C. F. McGreevy, covering several mining claims adjacent to the Vervaeke property. By the same instrument, the lessors transferred to Mr. Quackenbush their right to purchase several mining claims owned by appellants. The Venus Silver Mines Company had owned several of these mining claims, and Mr. A. W. Tyler owned others, including the Black Bear claim, one of those upon which the respondent sought to foreclose his liens, although this claim was not the property of the appellants. The situation resulting from these several ownerships and contractual rights was quite confused, and respondent's evidence as to the claims on or for the benefit of which, respectively, the work which he and his assignors performed was done, is anything but clear.

It is admitted that the lien claimants were, March 18, 1935, notified that the rights of Mr. Quackenbush in appellants' property had terminated, and no lien was allowed for work performed after this date. Whether or not the decree establishing the liens is supported by a preponderance of the evidence, considered from a purely factual standpoint, is doubtful, but in any event we are convinced that, as matter of law, the evidence

fails to show any right to hold appellants' property by way of liens for the work performed.

Generally speaking, work done, upon order of the vendee under a contract of purchase, will not support a lien on the property as against the interest of the vendor. *Mentzer v. Peters,* 6 Wash. 540, 33 Pac. 1078; *Iliff v. Forssell,* 7 Wash. 225, 34 Pac. 928; *Baker v. Sinclaire,* 22 Wash. 462, 61 Pac. 170; *Pitcher v. Ravven,* 137 Wash. 343, 242 Pac. 375. Upon termination of the vendee's rights, the claim of lien fails.

In the early case of *Stetson-Post Mill Co. v. Brown.* 21 Wash. 619, 59 Pac. 507, 75 Am. St. 862, it was held that real estate leased to a tenant who hired labor and procured material to improve the premises could not be charged with liens on behalf of the laborers and materialmen. The lease contained the following provision:

"And the lessors do further grant to the lessee the privilege to build on the premises described a brick building, the same to conform in kind and quality of material and dimensions of walls and construction of partitions to the ordinance of the city of Seattle known as the building ordinance."

This court held that the lease did not contain any contract for the erection of a building of any kind, but said that, even if it should be held

". . . that she [the lessee] was obligated to build at all, a building costing $100 would meet the requirements of the lease as well as a building which would cost $100,000."

It was held that the land could not be subjected to the liens.

The contract before us in the case at bar merely conferred upon Quackenbush the right to work and mine the property. He was obligated "to properly preserve and protect the property," but was not required to improve it at all. For all the option shows,

mineral could be taken from the claims without benefiting the property to the extent of a single dollar. The provisions in the option upon which respondent relies were purely for the benefit of Mr. Quackenbush.

An exception to this rule is that, when under a contract for the sale of real estate the contract itself requires the vendee to improve the property, workmen employed by the vendee to perform the work required by the contract or materialmen may have a lien. *Kremer v. Walton,* 11 Wash. 120, 39 Pac. 374, 48 Am. St. 870; *Kremer v. Walton,* 16 Wash. 139, 47 Pac. 238; *Sheehan v. Winehill,* 18 Wash. 447, 51 Pac. 1065; *Colby & Dickinson v. Baker,* 145 Wash. 584, 261 Pac. 101. This principle was clearly stated in the case of *Miles v. Bunn,* 173 Wash. 303, 22 P. (2d) 985, in which it was said: "The test is whether the lessee, under the terms of the contract, has a privilege merely, or is obligated, to construct improvements."

Respondent relies upon the following decisions of this court, which we will now consider:

In the case of *Dahlman v. Thomas,* 88 Wash. 653, 153 Pac. 1065, it was sought to foreclose liens against mining properties based upon labor performed at the instance of the grantee named in an option to purchase. According to the terms of the option, the grantees obligated themselves to commence mining operations and pay royalties until they had paid the first installment on the purchase price, which first installment was not due for four years. The royalties were not to be deducted from the purchase price. In the case at bar, Mr. Quackenbush was not obligated to commence mining operations, and the royalties received by appellants were to be credited upon the purchase price. The case is not in point.

In the case of *Pitcher v. Ravven,* 137 Wash. 343, 242 Pac. 375, it was held that a vendor in a contract for

the sale of real estate could quiet his title as against lien claimants who had improved the property upon the order of the vendee. The contract did not authorize any improvement, and while the vendor knew that a building was being constructed upon the property, he had neither approved nor disapproved of the work. This case supports the contention of appellants in the case at bar.

It was held in the case of *Finos v. Netherlands etc. Bank,* 147 Wash. 86, 265 Pac. 167, that a lien upon a mining claim could be maintained based upon work performed on order of the lessee under a lease which in law amounted to a special partnership or profit-sharing agreement, which expressly authorized the development of the mine. As the owner of the property was to benefit under the profit-sharing agreement, the liens were properly held valid.

Finally, respondent relies upon the case of *Seattle Lighting Fixture Co. v. Broadway Central Market,* 156 Wash. 189, 286 Pac. 43, 1119, in which liens were filed against the fee by persons claiming under contracts with the lessee. The lease in question was for ninety-nine years and required the lessee to erect a building according to agreed plans and specifications, and naturally the land was held liable for liens established in carrying out the contract.

Under the facts of the case at bar, the authorities relied on by respondent are not in point.

In the case at bar, the matter of the annual assessment work usually required to hold mining claims under the statutes of the United States not being required during the year 1935, no obligation under the option from appellants rested upon Mr. Quackenbush to improve the property or do any work whatsoever thereon. He could engage in mining operations on the property if he wanted to, and was obligated to pay appellants ten per cent of all net smelter returns from

ore or concentrates shipped from the property during the life of the option, such royalties to be applied on installments of the purchase price; but while this gave Mr. Quackenbush an opportunity to pay all or any portion of the purchase price of the property out of the proceeds thereof, it was a long way from *requiring* that he conduct any mining operations whatsoever thereon.

Under the option, only ten per cent of the net smelter returns was to go to the owners of the property, and this was to be credited on the purchase price; so manifestly the provision of the contract which allowed the holder of the option to mine the property was very greatly for his benefit. While some of the preliminary work which probably had to be done as preparatory to the removal of ore might result in benefit to the property, the mining operations, considered as a whole, might conceivably reduce its value by depleting the supply of mineral contained therein. It cannot be said that the option required the grantee thereof to improve the property. It merely gave him the option to conduct operations thereon, which might or might not be of benefit thereto. In any event, the contract, considered in the light of the act of Congress doing away with the necessity for performing assessment work, did not obligate the holder of the option to do anything in connection with the physical status of the land.

For the reasons stated, the work performed by respondent and his assignors cannot be made the basis for the foreclosure of any liens in their favor against the property.

The decree appealed from is reversed, with instructions to vacate that portion thereof foreclosing liens against appellants' property, and to dismiss the action as to appellants.

MILLARD, C. J., MITCHELL, and STEINERT, JJ., concur.

HOLCOMB, J., concurs in the result.