[No. 24489. *En Banc.* October 24, 1933.]

COLUMBIA LUMBER COMPANY, *Respondent*, v. BOTHELL
DAIRY FARM, *Appellant*, GREENACRES GOLF
CLUB, *Defendant.*[1]

*Burkheimer & Burkheimer,* for appellant.

*Lundin, Barto & Devin,* for respondent.

BLAKE, J.—The plaintiff brought this action to fore-
close a materialman's lien on a building erected by
defendant Greenacres Golf Club on land owned by the
defendant Bothell Dairy Farm. From a judgment
foreclosing the lien and permitting plaintiff to remove
the building from the land, the defendant Bothell
Dairy Farm appeals.

[1] Reported in 25 P. (2d) 1037.

In April, 1931, the appellant leased certain land in King county to Greenacres Golf Club. By the terms of the lease, the latter was to build a golf course and a water system on the property. While not mentioned in the lease, the golf club undertook to erect a club house. The lease contained a clause providing that all improvements should belong to the lessor upon the termination of the lease, either by forfeiture or expiration of the term.

Respondent furnished materials which went into the construction of the club house, and filed a lien upon the building and ground. At the trial, the respondent, having learned that appellant was the owner of the fee, abandoned its claim of lien on the real estate, and, under Rem. Rev. Stat., § 1146, prosecuted its action for lien on the building. This section provides:

"When for any reason the title or interest in the land upon which the property subject to the lien is situated cannot be subjected to the lien, the court may order the sale and removal from the land of the property subject to the lien to satisfy the lien."

There is no question raised as to the practicability of removing the building from the land; nor is there involved any question of damage to the property by reason of its removal.

The section (§ 1146, *supra*) has been referred to and construed in the following cases: *Bell v. Swalwell Land, L. & T. Co.,* 20 Wash. 602, 56 Pac. 401; *Cutler v. Keller,* 88 Wash. 334, 153 Pac. 15, L. R. A. 1917C, 1116; *Gile Inv. Co. v. Fisher,* 104 Wash. 613, 177 Pac. 710; *Brown v. Hunt & Mottet Co.,* 111 Wash. 564, 191 Pac. 860; *Colby & Dickinson v. Baker,* 145 Wash. 584, 261 Pac. 101; *Blossom Provine Lumber Co. v. Schumacher,* 147 Wash. 369, 266 Pac. 167.

A brief and comprehensive statement of the purpose of the section is contained in *Cutler v. Keller, supra,* as follows:

"The appellants urge that, under Rem. & Bal. Code, § 1146 (P. C. 309 § 87), providing that if the title or interest in land upon which the property subject to a lien is situated cannot be subjected to a lien, the court may order the sale and removal from the land of the property subject to the lien to satisfy the lien, the court should have ordered a sale of the building to satisfy their liens. . . . It is clearly intended to apply to cases in which the work was performed or materials furnished at the instance of a person owning less than the fee in the real estate. *Bell v. Swalwell Land, Loan & Trust Co.,* 20 Wash. 602, 56 Pac. 401."

This statement was explicitly approved in the case of *Gile Investment Co. v. Fisher, supra.*

In the case of *Bell v. Swalwell Land, L. & T. Co., supra,* the statute was given effect where a three story dwelling house was erected by the lessee of a purchaser of the land under contract. After forfeiture of the contract by the vendor, the materialman was permitted to foreclose his lien and remove the building from the land. In the case of *Brown v. Hunt & Mottet Co., supra,* the statute was construed as applying to structures erected in the streets of a municipality. In the case of *Blossom Provine Lumber Co. v. Schumacher, supra,* the statute was applied where the building was erected by one having no interest in the land. There this court affirmed a judgment foreclosing the lien of a materialman and authorizing the removal of the building from the land. This decision was grounded squarely on the *Bell* and *Cutler* cases.

In the case of *Colby & Dickinson v. Baker, supra,* however, the court did not cite or follow the *Bell* and *Cutler* cases. It was held that there could be no lien

upon the building apart from the land, where a lessee erected the building and the lease provided that the improvements should belong to the lessor in the event of forfeiture. While the statute is not discussed, it is apparent that the court considered the forfeiture clause in the lease paramount to the statute. This position cannot be sustained by authority.

Treating of this subject, Jones, in his work on Liens (3d ed.), vol. 2, § 1373, says:

"In several states the mechanic is given a lien upon the building separate from the land in preference to all prior liens upon the land, and provision is made for enforcing the lien by a sale and removal of the building or other erection. A statute to this effect abrogates in favor of the lien the common-law rule that things attached to the realty become a part of the realty, and that they cannot be afterwards severed without consent of the prior mortgagees of the land. A lien is given, not on the materials as such, but on the buildings or improvements in the construction of which the materials are used. The operation of the statute, in case there is a prior mortgage of the land, is to dissever the improvements from the realty by giving a superior lien on such improvements, and conferring on the purchaser the right to remove them."

All our cases but the *Colby & Dickinson* case support the foregoing text, and place a construction on Rem. Rev. Stat., § 1146, which not only gives it effect but harmonizes it with other sections of the lien law. Rem. Rev. Stat., § 1129, creates a lien on the building apart from the land. Rem. Rev. Stat., § 1130, creates, under certain conditions, a lien on the land upon which the structure is erected. These conditions are such that, to hold the land, the materials must be furnished on the order of the owner or his agent. And if furnished on order of his agent, the owner must be given notice of delivery, as prescribed by Rem. Rev. Stat., § 1133.

Appellant contends that, in any event, the respondent's claim of lien is void, by reason of respondent's failure to serve such notice upon it. This section (Rem. Rev. Stat., § 1133) would be applicable if respondent were claiming a lien on the land, but since the appellant's rights in the building, under the terms of the lease, are, by virtue of § 1146, *supra,* subordinate to respondent's right of lien, the notice required by § 1133 was unnecessary. The appellant was not the *owner* of the building in the sense contemplated by the section last mentioned.

Since the case of *Colby & Dickinson v. Baker,* 145 Wash. 584, 261 Pac. 101, cannot be distinguished from, or harmonized with, the other cases herein cited, it must be overruled.

The judgment is affirmed.

BEALS, C. J., MAIN, MITCHELL, MILLARD, STEINERT, and GERAGHTY, JJ., concur.

HOLCOMB, J. (concurring in the result)—I concur in the result, but believing the *Colby & Dickinson* case, *supra,* readily distinguishable from this, do not concur in overruling it.

TOLMAN, J. (dissenting)—In my judgment, the majority has lost sight of the common law, which is the rule of decision in this state, and has legislated into the statute something which the legislature might have written in, but utterly failed so to do.

At common law, unless a contrary intention is clearly manifest, a building or other structure, as erected stick by stick and stone by stone, becomes a part of the real estate upon which it is situate. In those instances only where a contrary intent is clearly manifest, does the building remain personal property, a separate entity and removable.

The legislature might have provided by apt language that no building should become a part of the real estate until the expiration of the lien period, and not then if liens were filed, but it utterly failed to do so, or to use any language indicating an intent to do so. A statute purporting to change the common law must clearly express its intended purpose so to do under a strict construction. Here, in Rem. Rev. Stat., § 1146, quoted by the majority, is no single word or sentence purporting to change the common law rule. On the contrary, when read in connection with the common law rule, its meaning is plain and unambiguous, and wholly in harmony with that rule. To one having the common law rule in mind, the statute clearly means, and can mean, nothing else than that, in those cases where, under the common law, a building does not become a part of the realty, the court may order its sale and removal.

This is the theory permeating the decision in the case of *Colby & Dickinson v. Baker*, 145 Wash. 584, 261 Pac. 101, and, as I read our other cases cited by the majority, no one of them denies that theory or asserts anything contrary to it. But each of those cases is an attempt to recognize the common law rule applicable to a structure intentionally kept separate from the real estate. I cannot take the time nor space to discuss these cases in detail as I would like, but certainly none says that the common law rule has been abrogated by § 1146 of the statute. Jones on Liens, as quoted by the majority, clearly applies to those statutes which abrogate the common law rule, and by no stretch of the imagination can our statute be so denominated.

The rule the majority now lays down will, I fear, lead to much injustice. The owner of real estate, without even notice that material has been furnished

or any structure erected, or without knowledge that his tenant has made repairs, will find a lien upon a structure which belongs to him, which, in practical effect, will be just as serious and burdensome as though the lien were upon the real estate itself.

I therefore dissent.